ARTHUR VINSON *v.* THE HOME INSURANCE COMPANY

(No. 9177)

Submitted September 4, 1941. Decided October 7, 1941.

*Thomas West,* for plaintiff in error.
*John E. Jenkins,* for defendant in error.

KENNA, PRESIDENT:

This action in assumpsit was brought in the Circuit Court of Cabell County by Arthur Vinson against the Home Insurance Company for the purpose of recovering under the collision clause of a policy issued by the defendant covering a Ford V-8 coupe which was damaged by colliding with a truck on the highway near Lexington, Kentucky, on the twenty-first day of January, 1939. The plaintiff filed the form of declaration prescribed by Code, 56-4-17, and made a photostatic copy of the insurance policy upon which plaintiff's alleged right of action is predicated a part of the declaration pursuant to the provisions of that section. Added to the prescribed statutory form of declaration is the allegation that Universal Credit Company, as well as plaintiff, had been refused payment

under the terms of the policy and had also refused to join plaintiff in prosecuting this action.

The defendant appeared and demurred to the declaration, assigning as grounds the fact that the policy declared upon and made a part of the plaintiff's declaration provides that any loss covered is payable only to Universal Credit Company by reason of which plaintiff alone cannot maintain this action.

The demurrer was sustained, and, plaintiff declining to amend, the case was dismissed with prejudice. This writ of error followed.

Although the defendant's demurrer specifies but a single ground, the order sustaining the demurrer and dismissing the action does not confine the court's finding that the plaintiff's declaration is insufficient to any particular reason, and since Code, 56-4-36, specifically accords the trial court the right in considering a demurrer "of its own accord" to go beyond the specified grounds of demurrer, we feel that the legal sufficiency of the whole declaration must be considered in order to determine whether or not there is any apparent error in the trial judge's general holding that it is insufficient at law. Had the order sustaining the demurrer been expressly confined to the assigned ground a different result might have followed.

The West Virginia case cited and mainly relied upon by plaintiff in error is that of *Staats* v. *Georgia Home Ins. Co,.* 57 W. Va. 571, 50 S. E. 815, 4 Ann. Cas. 541. The decision of that case, we think, turned upon the question of whether the beneficiary under a loss payable clause in a fire insurance policy was shown by the proof to have been a necessary party plaintiff, after an amendment had been allowed of the insurance policy filed as a part of the declaration by adding the loss payable clause in order to enable the declaration to conform with the proof. This Court held that because of the fact that the lien of the mortgagee could be otherwise fully protected under the loss payable clause, the mortgagee was not a necessary party. This language, excepting underscoring which is supplied, will be found in the opinion in the *Staats* case at page 573: "The provision that the loss-money shall

be payable to another is not an assignment. It is only a conditional appointment that on a contingency the money shall go to the mortgagee; that is, if the mortgage is still unpaid at the date of loss. And it may not cover all the amount of the loss. *The legal title in the contract is in the party in whose name the policy is issued.* The mortgagee can only get his debt. His right may be lost and is liable to all the defenses which may be made against the insured, unless it is otherwise provided in the policy, as sometimes it is." (Citing a number of cases.)

The apparent conflict in the decided cases at the time the *Staats* opinion was prepared in 1905 was based primarily upon the difference in procedure in those states having statutes conferring upon the real party in interest the right to sue, and states adhering to the common law where the legal title is the controlling element on the law side. The annotation to be found following the *Staats* case in 4 A. & E. Ann. Cas. 543, as illustrative of the conflict then existing, will be found useful.

A careful examination of the photostat of the original policy found in this record, we think, plainly shows that the interest of Universal Credit Company, at least technically, goes beyond that of a beneficiary under a loss payable clause. The contract of insurance is on a stereotyped printed form, paragraph (A) naming the insurance company and providing that it "does insure the assured named herein * * *." Space (B) contains an oval blank to the left of which appear two headings reading "Name of the purchaser assured" and "address of purchaser assured." In the oval appear the name and address of the plaintiff. Immediately below the oval preceded by a blank is the printed word "County", and in the blank has been typed the word "Cabell". The next line below "Cabell County" is begun with the words "and Universal Credit Company" followed by a period, which is the first punctuation mark in section (B). Without going further into detail of description concerning the actual appearance of the policy sued upon, we think the unavoidable conclusion is that the plaintiff, Arthur Vinson, and Universal Credit Company are named therein in the same

category or as "the assured", the only distinction between them being that Vinson is referred to as "purchaser assured" in order to distinguish him from the other named assured. In order to state it perhaps more clearly, we are definitely of the opinion that an examination of the insurance policy reveals that both Vinson and the Universal Credit Company are principal parties to the insurance contract, and jointly hold the legal title to any right which may become vested in the assured thereunder. As to the proper classification of parties litigant on both the law and chancery sides see the discussion in *Sadler* v. *Taylor*, 49 W. Va. 104, 115, 38 S. E. 583.

The second point in the syllabus in the case of *Sandusky* v. *Oil Co.*, 63 W. Va. 260, 59 S. E. 1082, reads as follows: "Upon a contract to pay a sum of money to two persons they must both unite as plaintiffs in an action for its breach, if living. Where one sues alone the non-joinder of the other is fatal, and the plaintiff cannot recover." In Judge Brannon's discussion, beginning at the bottom of page 263, will be found a clear statement of the court's reasons for reaching the conclusion that "the dry legal title * * * controls here."

The rule laid down in the *Sandusky* case will be found followed in *Steel* v. *American Oil Development Company*, 80 W. Va. 206, 92 S. E. 410, L. R. A. 1917E, 975, and approved in the case of *Bowen* v. *West Virginia Gas Corporation*, 121 W. Va. 403, 3 S. E. 2d 629, the discussion bearing upon this question commencing at page 405.

It is true that the foregoing West Virginia cases involve the construction of oil and gas leases, but each also involves the legal title with which the principal parties to the contract become vested without regard to the question of beneficial right, and each relates to an action based upon contract, as here. See also, *Sims* v. *Carpenter, Frazier & Co.*, 68 W. Va. 223, 69 S. E. 794.

In the recent case of *Home Insurance Company of New York* v. *Tumlin*, 241 Ala. 356, 2 So. 2d 435, involving an automobile insurance policy, the quoted parts of which are identical with the policy here involved, the Alabama Supreme Court, although treating it as being the bene-

ficiary of a loss payable clause, held that the Universal Credit Company was a necessary party plaintiff, basing that conclusion upon the fact that a judgment *res adjudicata* of the question of liability under the contract of insurance could not be rendered in its absence from the record. If that be true of the beneficiary of a loss payable clause, *a fortiori,* it is likewise true as to one of the principal parties to the contract of insurance.

But under the allegations of the declaration, Universal Credit Company stands on demurrer as declining to permit its name to be used as a party plaintiff. Since no interest in common with the insurance company requires that it be made a defendant, but to the contrary, its interests appear to conflict with those of that company and there is no manner in which process can issue against a plaintiff commanding it to appear, it would seem apparent that since Universal cannot be made a party on the law side, this case should be transferred to chancery. Code, 56-4-11, authorizes the transfer of a case improperly on the law docket to the chancery side where, regardless of their interest in the controversy, the addition of parties defendant in order to prevent abatement or defeat can be invoked under Code, 56-4-34, if not under settled chancery practice.

For the foregoing reasons, being of the opinion that the trial court's order sustaining the demurrer has not been shown to be erroneous and being further of the opinion that neither the plaintiff in error nor the defendant in error can be said to be substantially prevailing upon the question submitted to the trial judge for decision, the judgment of the Circuit Court of Cabell County in so far as it sustains the demurrer to the plaintiff's declaration is affirmed, and the case remanded with directions to transfer to the chancery docket with leave to make the Universal Credit Company a party defendant and for such further proceedings as may then be proper, costs to abide the final outcome.

*Affirmed.*

LOVINS, JUDGE, dissenting:

I dissent from the views expressed in the majority opinion. In my opinion, this case is governed by the holding of this Court in *Staats* v. *Georgia Home Ins. Co.*, 57 W. Va. 571, 50 S. E. 815, 4 Ann. Cas. 541, referred to in the majority opinion, which, as I understand it, distinguishes the *Staats* case and the case at bar by construing the insurance policy herein to give the Universal Credit Company an interest beyond that of a beneficiary under a loss payable clause "at least technically."

The only question presented herein is whether Arthur Vinson can maintain this action as sole plaintiff. The contract of insurance is a part of the declaration and it is necessary to consider the policy in its entirety in order to determine the point raised by the demurrer.

It is true that beneath the oval space provided for the "Name of the Purchaser Assured" the words "and Universal Credit Company" appear. However, the interest of the Credit Company is plainly set out in section D (13) wherein it is stated: "The automobile described is fully paid for by the Purchaser Assured and is not mortgaged or otherwise encumbered, except as follows: Lien of the Universal Credit Company. $637.56". This last quoted portion of the policy is of especial significance in that the interests of Vinson as owner and of the Universal Credit Company as lienor are made to appear in the policy itself; otherwise the technical construction of the policy, as adopted by the majority of the Court, would be appropriate. That Vinson is shown as "Purchaser Assured" does not alter the fact that he is treated as the owner of the insured property and the Credit Company as the holder of a lien thereon. With the interests so appearing from a careful examination of the policy, it seems to me that the demurrer to the declaration should have been overruled, under the authority of the *Staats* case.

Moreover, the effect of the majority holding, in my opinion, permits the insurance company to take advantage of a technical construction of one portion of its policy to defeat plaintiff's action, ignoring another part of the

contract (section D (13)), which appears to me to be controlling. If the entire policy is considered, as it should be, the actual and separate interests of Vinson and the Credit Company plainly appear. It is a well known rule of construction that in case of doubt or uncertainty, and the language of the policy is susceptible of two constructions, it is to be construed strictly against the insurer and liberally in favor of the insured. *Shinn* v. *Insurance Co.,* 104 W. Va. 353, 140 S. E. 61. The majority opinion, to my mind, violates well settled rules of construction, and hence I would reverse the ruling and judgment of the trial court.

Judge Fox concurs in this dissent.