419 S.E.2d 478

NEW VRINDABAN COMMUNITY, INC., Petitioner Below,

v.

Herschel H. ROSE, as West Virginia State Tax Commissioner, and Alfred Clark, as Assessor of Marshall County, West Virginia, Respondents Below.

No. 20891.

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1992.

Decided July 1, 1992.

G. Charles Hughes, Moundsville, for petitioner.

Mario J. Palumbo, Silas B. Taylor, Jeffrey W. VanGilder, Timothy J. Lafon, Office of Atty. Gen., Charleston, for respondents.

McHUGH, Chief Justice:

In this certified question proceeding, the petitioner is the New Vrindaban Community, Inc. (also referred to as the "taxpayer"); the respondents are Herschel H. Rose, as West Virginia State Tax Commissioner, and Alfred Clark, as assessor of Marshall County (also referred to as the "State").[1]

I

In 1984, the Marshall County Assessor sought the opinion of the State Tax Commissioner[2] regarding the tax exempt status, if any, of 102.82 acres belonging to the taxpayer pursuant to the religious exemption contained in *W.Va.Code*, 11–3–9 [1973, 1990], discussed *infra*.

On February 28, 1984, the Commissioner, by written opinion, ruled that the 102.82 acres at issue are not exempt under *W.Va. Code*, 11–3–9 [1973, 1990].

As contained in the Commissioner's opinion, the property at issue includes lodging buildings, a gift shop, a restaurant, and the temple known as Prabhupada's Palace of Gold. The gift shop and restaurant are involved in retail sales of items and food, respectively. There is an admission fee charged for entrance to the temple. It is also asserted that the taxpayer advertised on brochures distributed at a country music festival for special rates to see the palace. It is also asserted that the taxpayer generally advertises heavily through brochures and billboards. The palace is located within the same structure as the gift shop.

Pursuant to *W.Va.Code*, 11–3–25 [1967], which is also discussed in more detail *infra*, the taxpayer appealed the assessment to the Circuit Court of Marshall County. The parties engaged in substantial discovery, although the matter was not heard *de novo* by the circuit court. Rather, upon the taxpayer's motion for summary judgment or declaratory judgment in September, 1989, the circuit court certified a question to this Court, which, for some reason, was never presented to this Court.

In May, 1991, a status conference was held wherein the State requested a *de novo* hearing on the matter. The circuit court instead recertified the question, which, in essence, asks: Whether the *ad valorem* property taxation exemption provided by *W.Va.Code*, 11–3–9 [1973, 1990] violates the First Amendment to the *United States Constitution?* The circuit court opined that it does so violate.[3]

In this opinion, though, we choose not to reach the question certified by the circuit court because it is clear that the factual circumstances of this case could be more developed in that court, as required by *W.Va.Code*, 11–3–25 [1967], even before

---

**1.** Mr. Rose no longer serves as State Tax Commissioner. Alan L. Mierke now serves as Acting State Tax Commissioner.

**2.** *See W.Va.Code*, 11–3–24a [1961].

**3.** The full text of the certified question is framed thusly:

Whether the scope or sweep of the Religion Clauses of the First Amendment are implicated by the decision of the State Tax Commissioner that the subject property was not being used 'exclusively for divine worship' and therefore was not exempt from taxation under *W.Va.Code*, 11–3–9 [1973], specifically, whether the decision of the Commissioner on the question of 'taxability' serves either to directly or indirectly establish religion or to interfere with the free exercise thereof, given the pur-

pose of the property tax exemption authorized by the Constitution of this State, as implemented by the *W.Va.Code*, and in the particular factual circumstances posited here; as well as whether the boundaries of separation between church and state have been delineated with sufficient clarity to avoid proscribed entanglements and guarantee equal and uniform treatment and protection under said Religion Clauses, both generally and in the factual circumstances posited here[.]

However, "upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale, & Department Store Union*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980).

the question, as certified to us, could be answered.[4]

## II

Article X, section 1 of the *West Virginia Constitution* provides, in relevant part:

Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value; ... but property used for educational, literary, scientific, *religious or charitable purposes,* all cemeteries, public property, the personal property, including livestock, employed exclusively in agriculture as above defined and the products of agriculture so defined while owned by the producers *may* by law be exempted from taxation[.]

(emphasis supplied)

The legislature accepted this constitutional invitation to exempt certain property from taxation by enacting *W.Va.Code,* 11–3–9 [1973, 1990].[5] That section provides, in relevant part:

All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation, that is to say: ... property used exclusively for divine worship; parsonages, and the household goods and furniture pertaining thereto; mortgages, bonds and other evidence of indebtedness in the hands of bona fide owners and holders hereafter issued and sold by churches and religious societies for the purposes of securing money to be used in the erection of church buildings used exclusively for divine worship, or for the purpose of paying indebtedness thereon[.]

Notwithstanding any other provisions of this section, however, no language herein shall be construed to exempt from taxation any property owned by, or held in trust for, educational, literary, scientific, religious or other charitable corporations or organizations, including any public or private nonprofit foundation or corporation existing for the support of any college or university located in West Virginia, unless such property, or the dividends, interest, rents or royalties derived therefrom, is used primarily and immediately for the purposes of such corporations or organizations.

The tax commissioner shall, by issuance of regulations, provide each assessor with guidelines to ensure uniform assessment practices statewide to effect the intent of this section.

In addition to the more general constitutional question that has arisen concerning this statutory provision under the First Amendment to the *United States Constitution,* factual questions are presented by application of this statute, even conceding its constitutional validity.[6] Primarily, the factual question that is most likely to determine whether a taxpayer is granted a "religious" exemption pursuant to *W.Va. Code,* 11–3–9 [1973, 1990] is whether that taxpayer's property is "used exclusively for divine worship."

Against this backdrop, however, is *W.Va. Code,* 11–3–25 [1967], which provides, in relevant part:

---

4. In this Court's order granting review in this case, we "ordered that the parties brief, in addition to the issues fairly raised by the certified question, the issue regarding the right to a de novo hearing pursuant to W.Va.Code, 11–3–25."

5. The 1973 version of *W.Va.Code,* 11–3–9 was in effect at the time of the assessment in this case. The 1990 amendment, which has no bearing on this case, merely added an exemption for property used for the public purpose of distribution of natural gas by a nonprofit corporation.

6. The First Amendment to the *United States Constitution* provides: "Congress shall make no law respecting an *establishment of religion, or prohibiting the free exercise thereof;* or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (emphasis supplied) The establishment and free exercise clauses of the First Amendment are made applicable to the states through the Fourteenth Amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940).

Any person claiming to be aggrieved by any assessment in any land or personal property book of any county who shall have appeared and contested the valuation or whose assessment has been raised by the county court [county commission] above the assessment fixed by the assessor, or who contested the classification or taxability of his property may, at any time up to thirty days after the adjournment of the county court [county commission], apply for relief to the circuit court of the county in which such books are made out; ... If, however, ... a *question of* classification or *taxability is presented, the matter shall be heard de novo by the circuit court.* If, upon the hearing of such appeal, it is determined that any property has been valued at more than its true and actual value, or illegally classified or assessed, the circuit court shall, by an order entered of record, correct the assessment, and fix the property at its true and actual value.

(emphasis supplied)

As can be seen from *W.Va.Code*, 11–3–25 [1967], if a question of *taxability* is involved, a *de novo* hearing is *required* by the circuit court. This requirement is clear, as the statute provides that "the matter *shall* be heard de novo by the circuit court." (emphasis supplied)

■ "The word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syl. pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969). *Accord*, syl. pt. 5, *Rogers v. Hechler*, 176 W.Va. 713, 348 S.E.2d 299 (1986).

Prior to answering the certified question as it pertains to the taxpayer in this case, it is not clear as to whether the constitutional ramifications, if any, would even apply. This Court has held: "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken." *Mainella v. Board of Trustees*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943). Furthermore, "[i]t is a fundamental rule of constitutional adjudication that constitutional questions are avoided unless absolutely necessary." *Harshbarger v. Gainer*, 184 W.Va. 656, 660, 403 S.E.2d 399, 403 (1991).

There was no *de novo* hearing in this case, and the taxpayer does not dispute this. Rather, the taxpayer asserts that the fact that there has been no *de novo* hearing does not interfere with this Court answering the certified question as presented.

■ We do not agree with the taxpayer's assertion in this regard. Rather, we believe that it is unnecessary to address the question of constitutionality at this point inasmuch as the matter at hand has not been heard *de novo* by the circuit court as required by *W.Va.Code*, 11–3–25 [1967]. The circuit court should have conducted a *de novo* hearing in this case before certifying the question on the constitutionality of *W.Va.Code*, 11–3–9 [1973, 1990]. As pointed out by the State, if the circuit court finds that the taxpayer is not a religious entity, obviously, the First Amendment analysis would have no application.[7]

■ Accordingly, we hold that where a question of taxability arises under *W.Va. Code*, 11–3–25 [1967], and such question involves the constitutionality of a statute granting exemption from taxation, the matter shall be heard *de novo* by the circuit court before this Court will pass on the

---

**7.** The taxpayer maintains that the key factual determinations have already been made in this case as evidenced by an "agreed" order between the parties. That order contained findings which, among other things, states that the taxpayer is exempt from federal income tax under § 501(c)(3) of the *Internal Revenue Code*, which grants a federal tax exemption for religious corporations and foundations. However, the State points out that it filed a motion to correct the order because it contained findings that were erroneously agreed upon by counsel for the State. The circuit court denied the State's motion to correct the order as well as its motion to compel discovery, but instead, certified the question in this case to this Court. It is disagreements such as these that reveal the need for a *de novo* hearing, and these matters should be resolved by the circuit court at that hearing.

constitutionality of the statute granting the exemption.

Therefore, this case is remanded to the Circuit Court of Marshall County so that it may conduct a *de novo* hearing with respect to whether the taxpayer in this case is exempt under the provisions of *W.Va. Code*, 11–3–9 [1973, 1990].[8]

Remanded.

MILLER, J., deeming himself disqualified, did not participate in the consideration or decision of this case.

---

8. Usually we will answer the certified question as presented to us, or in similar terms. However, because, in granting review in this case, we pointed out that the lack of a *de novo* hearing may have some bearing herein, we remand this case on that issue. *See* note 4, *supra.*